Good morning. Welcome to the Ninth Circuit. I'm glad to be joined by my colleagues Judge Fletcher and Judge Berzon, and we would just like to ask everybody to, we've got four arguments set for argument today, so try and pay attention to the clock and sum up as the time's expiring. Let us know if you want to reserve any time for rebuttal. We'll go ahead and proceed with the first case set for argument, which is Cail v. Holbrook, case number 23-2774. Good morning, Your Honors. Alan Sarky on behalf of Mr. Cail. I'd like to reserve three minutes, and I'll watch the clock. As the Court knows, equitable tolling is about injecting flexibility into a system to prevent inflexible rules from creating injustice. This case is about giving Mr. Cail, who was a pro se in district court, a fair chance to establish that he was entitled to equitable tolling. The district court should have ordered an evidentiary hearing. Mr. Cail did the best he could as a pro se to get facts in front of the Court, and the Court should have given him the --- Could you tell me what facts in particular you think might have come out or could have been inquired into or you would inquire into if you represent him at a hearing that could meet what standard? Are we talking about the extraordinary circumstances standard or abandonment or whatever? Yes, Your Honor. There are really two issues. One is ---- First of all, what is the standard that you're talking about? The two issues as to which he would have presented facts pertaining to, one, did Mr. Brown represent him on his habeas, and second, were there extraordinary facts? In terms of the first, both the State and the Court erred in treating the written contract as dispositive. It's clear that Mr. Brown, that that contract was amended in some way because it only ---- Well, let's say you could establish. I mean, it seemed from the fact that the paralegal did get involved in at least supporting him on the habeas later that there was some kind of commitment. I mean, it might have been a commitment not to have him do a pro se, but to help him or something like that. But let's assume that. All right. So he would have been able to establish further facts to establish there was a contract, there was a promise to represent him on the habeas. And, Your Honor, I will first fully agree that the factual predicate he lays out is not as clear and as specific as it would have been if he'd been represented by counsel. But implicit, I think, in his representations are facts sufficient that he would have been able to then establish at an evidentiary hearing that there were extraordinary circumstances in terms of, contrary to what the State suggests, extraordinary circumstances does not require that they be tantamount to abandonment. It can be other things such as promising to get things in on time and then failing to do so with repeated promises and so forth. And that's the sort of thing that I think Mr. Cale, admittedly not as as it would have been had I been representing him, but sufficient given the liberal construction that pro se pleadings are entitled to. So what are those circumstances here? Well, obviously, I can't refer to facts not in the record. Right. Well, I'll be helpful, actually, if you did. I mean, not to facts, but a hypothetical. Okay. So you can tell us what might be established in the hearing. Right. Okay. Hypothetically, that Mr. Brown agreed not only to represent Mr. Cale on the habeas, but repeatedly promised that any such habeas would be on time and that Mr. Cale, you know, checked on that and sought assurances, got the assurances. And despite that, Mr. Brown and his law office allowed the habeas statute to lapse by not filing the PRP in a time that would be consistent with federal rules as opposed to state rules. We have case law that says that an attorney's miscalculation, even if that's true, that the attorney's miscalculation of the statute of limitations is not extraordinary, a basis for extraordinary circumstances. Yes, Your Honor, the mere miscalculation is not enough. But we have cases such as Luna and other cases I cited in our opening brief that make clear that if there are repeated assurances, that can constitute extraordinary circumstances. I'm wondering... And again... That's a little peculiar because, I mean, you know, so if you missed the date and you didn't... I mean, any lawyer who undertakes to represent somebody is promising to do it in a timely manner, presumably. I mean, what difference does it make if you tell me you're going to do it in a timely manner? Well, I understand that there's, you know, a line here and there's a question of where you draw it, but we have case law where this Court and other circuits have consistently said that repeated assurances that you will get a habeas filed on time is different from simply miscalculate. Which case are you... The Ninth Circuit cases? Luna is the main case on which we're relying. But it cites to a number of other cases and both in this circuit and others, and that is discussed in detail in our opening brief. So I agree that Mr. Kale's petition, as I said, is not as detailed as I would have liked it to have been and as it would have been had I been representing him at the time. But that's why the Court should have granted evidentiary hearing. Recall that, Your Honor, Mr. Brown was under a conflict. He admits that he had messed up in terms of the statute of limitations and the Supreme Court in Mables v. Thomas points out, you know, when a firm's interest in avoiding damages to its own reputation are at odds with the petitioner's argument, in that case, the attorney had abandoned... Now you're sort of trying to switch it over to an ineffective assistance counsel claim, it seems like. No, Your Honor. What does... I'm not sure what more this adds. What it adds is the difficulty in Mr. Kale getting things into the record prior to an evidentiary hearing, given that his former attorney is under conflict. It seems like that all circles back to the same question, though, which is what would you have put in? Because you still have to show that there was a good faith allegation that, if true, would entitle your client to equitable relief. And so, I mean, all of this, I mean, I don't even think you have to show that. I think you don't have to show that there was conflict or any of that. You just have to show that you had a good faith allegation that, if true, and that's what I think we're trying to grapple with. What is that? Your Honor, I perhaps took the Court down the wrong path. I mentioned Mr. Brown's conflict only because it relates to the fact that it's harder for Mr. Kale to make a record. That's all. But we're already saying, you know, your claim here is we wanted to create a better record. The whole question seems to stem on what would that record have been. And I think we're, at least I'm still looking for something that would give you, in Roy, that says a good faith allegation, which, if true, would entitle your client to relief. And I'm down to my three minutes, but let me try to answer your question. Again, I can't say things that are not currently in the record, but the kind of things that could come out in hearing would be the kind of things that satisfy the test as discussed in cases like Luna, in terms of repeated assurances. That's the kind of thing. I mean, to me, the real mystery here, and what I would not mind knowing more about, is the fact that this paralegal sent him, you know, a couple years too late, a model petition for him to file in his own name, not in the name of the law firm, and also sent him the record. So it seems to have gotten reactivated in some way. And what, I mean, I would be interested to know what, you know, what he was told at that time. Were they representing to him that there was still some way to resurrect the case, or what? That all would be interesting. I would agree that the errors of counsel that constitute extraordinary circumstances ultimately have to occur before the statute is run, and I don't dispute that. But I agree these are some interesting questions that we would hopefully be able to address in an evidentiary hearing, and if I could reserve the rest of my time. Okay, thank you. Good morning. May it please the Court. Keith Hines for Donald Holbrook. Starting off with Judge Nelson's question about this claim that you can get an evidentiary hearing just by making good-faith allegations that, if true, entitle him to equitable tolling, this Court rejected that exact argument in a case called Ortho v. Yates, 795 F3D 395, and it starts at 398. The Court rejected that exact argument. The Court said, no, the law... You don't get an evidentiary hearing if you have good-faith allegations on which you would be entitled to relay? No, the Court rejected that argument and said the law is not that simple. The law is... What argument? About the statute of limitations? About you can get an evidentiary hearing if Trayvon Kail just makes good-faith allegations that entitle him to equitable tolling. Well, you know, I've not read that case, or maybe I've not read it recently, but if that's what it says, it's wrong. That can't be the law. That is to say, if you have good-faith allegations that, if true, would entitle you to relief, it cannot be true that you don't get a hearing on those allegations. Well, the ruling is that the District Court has to look at the sufficiency of the record and that the record is amply developed. And if the record is amply developed, then an evidentiary hearing would be futile. That's a different question. I mean, you might be carving out a little more than you need to in this case, because let's take Roy, which I have read. I have not read Ortho, but Roy says, if you have good-faith allegations that, if proven, would entitle him to equitable relief. I thought there wasn't much here, but he raises the Luna case, because our case law also seems to be clear that the miscalculation of the statute of limitations is not enough. Now, we get reference to the Luna case that says miscalculation is not enough, but apparently repeated insurances could be. Can you address the Luna case? So, the facts of Luna are not present in this case. So, this record shows... Oh, I mean, he's claiming they are, because he's claiming he could show evidence. And that would be... Luna actually said what he says it says. I don't know. That might be an open question. Well, the record here shows John Brown has that declaration on ER 42 and 43, saying he filed the state court personal restraint petition after the federal habeas deadline expired, and he didn't recognize that. And that's negligence. I think that's not the... I agree with you on that. The question is, could there have been an evidentiary hearing that posited this idea that he gave repeated insurances? And if that's true, would that have made a difference? Your opposing counsel claims that Luna says that that's true. I'm going to read it with interest, but I want to know if you have a response to that. Does Luna say that? And do we need to look at that? No. And I would direct the court to Morris v. The State of California, which says, and that's in my response brief, Morris v. The State of California says, you can't just speculate your way into an evidentiary hearing. You can't make bare allegations. You need to produce some evidence first. Here's an interesting point again. We want to know, assuming that he made it on what they have, and assuming that there are good faith allegations, and that the good faith allegations are sufficient, is there... In other words, we don't need more evidence if we have good faith allegations. No. And my point is, you can't get an evidentiary hearing just based on good faith allegations. I know that's what you're saying. We're extremely skeptical of that proposition. So, we would like to know whether, if that is not so, and if good faith allegations are good enough, substantively, what kind of allegations would be enough to get him an evidentiary hearing? And my answer is going to be somewhat speculative, in a way. If John Brown did something like, like in Luna, where the attorney dismissed a pro se habeas petition for, as this court said, for no good reason. If John Brown made some promise, I'm going to file your petition soon or shortly. And he just never did. And so... May well be that in Luna, at least in part, it appears that the promises put him in a position where he could have done something differently if he didn't have the promises. Right? In Luna, yes. Here, at least once the time was passed, there's nothing he could have done. So, any promises would presumably have to be before that. Um, I don't know. So, what about the following? I'm speculating, but what if the evidence were to show that Brown says to Mr. Kahle, I'm on top of this. Don't worry about it. Kahle said, well, you know, I'm perfectly prepared to file my own document. And he says, no, I'm on top of it. Don't do it. And then he's not on top of it. But Kahle, we have evidence of the record that says Kahle relied upon his saying that he was on top of it. And if he had not relied, he would have filed the protective petition on his own. Is that not enough? I mean, that is very similar to cases like Luna. Right. That's what I'm saying. And so the problem is, but the problem with doing hypotheticals in this case is that Morris v. The State of California said you can't speculate your way into an hearing. You have to produce evidence first. You can't just make a bare allegation. Wait a minute. So you've got to produce evidence that would be produced in the hearing before you even get the hearing? What if you say, I will produce evidence. I need the hearing in order to produce it. No, Morris v. The State of California said you got to produce affidavits, documentary evidence. You can't just say, well, here's a bare allegation of this or that. John Brown said this. John Brown said that. No, you have to produce affidavits, documentary evidence first. Even looking at the facts of Morris, there was a bare allegation of an attorney conflict of interest. And this court said, no, you can't just make a bare allegation of a conflict of interest and get an evidentiary hearing on that question. You have to produce evidence first. Go back to the thing that I'm sort of curious and mystified about. This fact that this paralegal later prepares a petition for him and gets the record for him, indicating that the firm, in terms of demonstrating that the firm seemed to have been leading him on in some way, because well after the time had run, there seemed to be representing to him that he can still file a petition. Well, I think that's, I think that's speculative in a way to say. Speculative. I mean, they did in fact provide him with a, I mean, came through a paralegal, but I don't know what difference that makes. It's the firm. Provide him with a petition filled out and send the state court record to him at this later juncture. I mean, I can just assume for the sake of argument that John Brown did represent Trayvon Kail on the federal habeas petition. But the issue you're going to run into quickly is some suggestion well after the fact that there was still something that could be done about this. I don't think that's suggested by that. The paralegal didn't say anything like that. We're inherently speculating and inferring that from the record. What's the point of sending somebody a petition that's going to be thrown out? Well, I'm not sure anyone knew that. I'm not sure. Trayvon Kail could have. Trayvon Kail is a problem is two years after the fact, right? I mean, this is the problem with speculating. I mean, Trayvon Kail could have just said, hey, can I get the petition and the record? And then they send it to him. I mean, we don't know what's going. The record shows right now garden variety negligence because of John Brown's declaration. That's right. I want to point you to your brief at page 17 where you actually cited Luna and you said egregious misconduct by counsel arising to the level of abandonment may be a basis for equitable tolling if the attorney's misconduct actually prevents the petitioner from filing a timely federal petition. Isn't that exactly what their argument is here? That because of the repeated assurances, it's not just that he missed the deadline, but he repeatedly, allegedly, repeatedly misled him that he did. Everything was fine. And if he had known that he wasn't going to file the petition timely, that he he would have perhaps taken it on himself. I mean, I don't. That's why wouldn't that be enough for an evidentiary hearing to flesh out those facts? But that allegation is inherently contradicted by the fact that Trayvon Kail filed the petition, pro se, and no attorney signed it. Yes, but it was in the version that was sent to him by them. But he filed it himself, pro se, and no attorney signed it. And there's no evidence an attorney worked on it. Your point is he didn't independently come forward and file it within the statute of limitations at all. In fact, apparently he didn't even file it. Did he file it within the statute of limitations that apparently was mistaken? No, he didn't file the pro se petition until December 2021, which was years after the deadline passed. OK, so your response to my question is even if there were alleged misconduct here, you know, egregious misconduct, it didn't actually prevent him from filing a timely. Yeah. At any point in May 2018, when when direct review ended, he could have filed his pro se petition. There was nothing. There's nothing in the record. There's nothing stopping him from filing his own pro se petition. He just didn't do it. But on the other hand, what do we know as to why he didn't? Meaning I'm going to ask the other side as to what evidence we have now that might produce at least an evidentiary hearing to see whether it's true or not that he was assured by Brown. Listen, don't worry about it. Don't file anything. I'm on top of this. And that's I'm going to go back to my speculative point. Like that is speculation. And we're just and that doesn't get you an evidentiary representation point or whether he was continuing to represent him. Right. Or does that go to the statute of limitations? It can go to both and go to both parts of that. It's very clear that he was represented by Brown through the filing of the state PRP. And the state PRP was filed so late that by that time, the federal deadline had already passed. I mean, so the Senate had already been committed during the PRP for proceeding or up to leading up to the PRP. It doesn't matter at all whether Brown was representing him later in the attempted federal stuff because Brown had already betrayed him by filing the PRP too late. And that betrayal would be garden variety negligence, which is. Well, that's the question. What you just read from your brief about Luna is wrong because you said that Luna has to be extraordinary circumstances arising to the point of abandonment. And that is not the law. Luna does say a wide variety of misconduct could constitute extraordinary circumstances. So that statement in your brief is incorrect. Yes. Yes. Luna, I'm going to obviously follow this court's decision in Luna. That is what this court articulated in Luna. But John Brown was merely negligent. The district court is not required to hold evidentiary hearings on issues that can be resolved just by looking at the record. And just by looking at the record, we see garden variety negligence. So there's no abuse of discretion. And I ask this court to affirm the district court's decision. Thank you. Thank you. We'll give you time for a rebuttal. Yes, Your Honor. Two or three reports. Very quick. I have to interrupt you before you start. I'm sorry about that. Is there a diligence problem anyway? He didn't file it right away. He didn't file it when he was told it was too late. He filed it a while later. Is that correct? Yes, Your Honor. But I think about a month later. Just a month later? Is that right? I thought it was a year later. I believe they gave it to him in December and he filed it in January. I'm sorry. I don't have the dates right in front of me. But that diligence... I'm not talking about when they gave it to him. I'm talking about when he was told... When was he told that it was too late? He was not ever told it was too late until the court said it was too late. I see. So he was not... Well, could that be egregious circumstances if they didn't... I mean, we know there was interactions with the firm after the deadline had passed. And so do we know whether they told him at that point that it was too late? We do not, Your Honor. That's not in the record. But it sort of seems like they didn't because why are they sending him these petitions? All right. Go ahead. So just quickly, the suggestion that Mr. Kale could have filed a protective petition earlier, that would undo all of equitable tolling law. You could say that about any individual. But if an individual is misled by his attorney and assured you don't need to file, you don't need to file, I've got it, he still could file a protective, but that can't undo equitable tolling. Secondly... I'm sorry. What do you mean that cannot undo equitable tolling? It cannot deny equitable tolling the ability to file a protective petition in every circumstance. There are certain circumstances where it might, but... Please, please. Can we say that the other way around? This is to say it cannot undo. Is it a basis for equitable tolling if the attorney says, don't file anything, I've got it, relying on the statement of the attorney, he doesn't file anything? Had the attorney said, well, hey, maybe you better file something, he would have done. Now, is that a basis for equitable tolling? If the attorney gives him the notice, then I think there is at least a much closer question and potentially equitable tolling would be denied due to a lack of diligence, yes. But that's... So very quickly... No, no, no, I want to keep going on this. I'm sorry. What evidence, if any, do we have at this point as to correspondence between Brown and Cale, Brown saying, I've got it, don't file anything independently? We do not have that evidence now, which turns to the point... And do we have any reason to think that evidence might exist? On the record. There's no evidence on the record that other than Mr. Cale's allegations that I think fairly with a pro se liberal reading suggest the potential for that. Let me go back to my question, my diligence question. When was the motion for discretionary review with the Washington Supreme Court denied? Because he filed... It was filed in 2019 and he didn't file a habeas petition until 2022. So the question is, why did he wait till 2022 to file the federal habeas petition? Well, because he was reliant on Mr. Brown... To do what? Well, I mean, what I'm saying is, if he had already been informed that the Washington petition was denied a year or two ago, right? I mean, he had to have known that the federal, or he should have known that the federal timeline was running in the meanwhile. So what I'm trying to figure out was, did it run for more than a year after that, after the denial such that he had to have been late no matter what? The mandate on the PRP was December 4 of 2021. The petition was filed January 4, 2022. He did file promptly after the... Mandate, yes. Mandate, okay. So very quick, as I think Judge Nelson was listening, I don't have a copy of Brown with me. I didn't respond to it in my reply brief, but I know from prior briefing in other cases, that case does not undo the law, that it is allegations, not evidence. Well, we'll look at that. Also, although you quote what the government, what the state says regarding Luna, they're still wrong to say that it needs to arrive to the level of abandonment. He agreed with that. He agreed that it's wrong. All right. Unless the court has other questions, I'm prepared to submit. Thank you. Thank you both, counsel, for your arguments in the case. The case is now submitted.
judges: FLETCHER, BERZON, NELSON